UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN T. DYE, JR.,           ) | |
|                              ) | |
|      Plaintiff,            ) | |
|                              ) | |
| v.                            ) | Case No.: 3:06-CV-260 CAN |
|                              ) | |
| FOREST RIVER, INC.         ) | |
|                              ) | |
|      Defendant.          ) | |

**ORDER AND OPINION**

On April 19, 2006, Plaintiff John T. Dye (Dye), proceeding *pro se*, filed a complaint alleging he was discriminated against because of his race and gender in violation of Title VII. On May 18, 2007, Defendant Forest River, Inc. (Forest River) filed a motion for summary judgment. On June 5, 2007, Dye filed his response, to which Forest River subsequently moved to strike on June 27, 2007. The Court now enters its rulings on all pending matters in this case.

**I.     PROCEDURAL HISTORY**

On November 4, 2005, Dye filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that he suffered adverse employment actions based on his race and gender. On January 19, 2005, the EEOC issued Dye a right to sue notice. On April 19, 2006, Dye filed his complaint in this Court. On June 27, 2006, this matter was reassigned to the undersigned based on the consent of the parties.

On May 18, 2007, Forest River filed a motion for summary judgment. On June 5, 2007, Dye filed his response, and on June 27, 2007, Forest River filed its reply. On June 27, 2007, Forest River also filed a motion to strike; and on July 2, 2007, Dye filed his response. On July 12, 2007, all matters were fully ripe for this Court to review. This Court may rule upon these

1

motions pursuant to the parties' consent and 28 U.S.C. § 636(c)(1).

      A.      Forest River's Motion to Strike

Forest River seeks to strike Dye's entire response.  Because this Court has decided that Forest River is entitled to summary judgment even after considering all evidence Dye submitted as well as his response, Forest River's motions to strike is **DENIED AS MOOT** [Doc. No. 92].

**II.**    **ANALYSIS**

      A.      Facts

Forest River manufactures RVs at multiple facilities in Indiana, with its principal place of business in Elkhart, Indiana. (Def.'s Ex. 85-7, Aff. of Jeffrey Rowe ¶ 4).  Dye, an African American, was hired as an employee of Forest River's Tsunami Plant on or around June 15th, 2005.[1]  (Def.'s Ex. 85-2, Dep. of John Dye 116).   While on light duty, due to a job-related injury, Dye approached Forest River's Human Resource Managers, Jeff Rowe (Rowe) and Angela Garza (Garza), and sought a transfer to Forest River's Salem Plant in order to make more money.  (Def.'s Exs. 85-2 & 85-3, Dye Dep. 133-38; Rowe Aff. ¶¶ 5-6; Def.'s Ex. 85-10, Aff. of Angela Garza ¶¶ 3-4).  Both directed Dye to Salem's Production Manager, Eric Sharp (Sharp), regarding openings at the Salem Plant. (Def.'s Ex. 85-3, Dye Dep. 137-38; Rowe Aff. ¶ 6; Garza Aff. ¶ 4).

Forest River's Salem Plant began operations in September, 2005.  (Def.'s Ex. 85-8, Aff. of Eric Sharp ¶ 2; Def.'s Ex. 85-9, Aff. of Robert Elson ¶ 3). Since its opening, Sharp has served as Production Manager and is responsible for overseeing the Salem Plant. (Sharp Aff. ¶ 2). Additionally, from September through November 2005, Robert Elson (Elson) served as Plant

---

[1] The Tsunami Plant is the name of one of several RV manufacturing plants operated by the Defendant, Forest River, Inc.  (Rowe Aff. ¶ 4).

Supervisor at the Salem Plant and was responsible for supervising group leaders. (Id. at ¶ 4; Elson Aff. ¶ 3). As part of the production line at the Salem plant, the Shelling Group was responsible for building and setting the walls of each RV unit. (Sharp Aff. ¶ 10; Elson Aff. ¶ 8).

Sharp hired Dye as a cabinet setter in the Salem Plant's Shelling Group, which increased Dye's hourly pay rate by $6.00 an hour from $14.00 to $20.00. (Def.'s Exs. 85-3 & 91-3, Dye Dep. 147-48, 152, 158-59; Sharp Aff. ¶ 6). Dye was employed at the Salem Plant from October 10, 2005, until October 24, 2005. (Rowe Aff. ¶ 13; Sharp Aff. ¶ 7).

During his two-week employment at the Salem Plant, Dye held two different jobs in the Shelling Group: setting cabinets and building sidewalls. (Sharp Aff. ¶ 12; Elson Aff. ¶ 10). Dye considered himself to be experienced in both of these positions. (Def.'s Exs. 85-3 & 85-4, Dye Dep. 147, 259). The cabinet-setter is responsible for screwing the base cabinets to the walls and installing the overhead cabinets. (Sharp Aff. ¶ 10; Elson Aff. ¶ 8). The sidewall builder is responsible for selecting the appropriate, pre-constructed jig – a template that holds wood in place for fastening – and using the jig correctly. (Sharp Aff. ¶ 20; Elson Aff. ¶ 17). Each worker was instructed to inspect his work "to insure it was done correctly," and "[it is] the group leader's job to insure the units are being built correctly." (Def.'s Ex. 85-6 at 14, Elson Memo).

During his first week at the plant, Elson met with Dye regarding the quality of Dye's cabinet-setting work. (Def.'s Ex. 85-4, Dye Dep. 215, 225-26; Elson Aff. ¶ 12). In response, Dye faulted the quality of the pre-constructed cabinets he was given to set. (Def.'s Ex.85- 4, Dye Dep. 215-217, 225-26, 28; Elson Aff. ¶ 25). Elson acknowledged that some of the quality issues were not Dye's fault but maintained that Dye had failed to set the cabinets plumb to each other and had failed to install the plywood panels that hide screws and cleats. (Elson Aff. ¶¶ 11, 25). Also, during his first week at the Salem Plant, Dye confronted his group leader, Ball, questioning

3

the amount of time it was taking Ball to set sidewalls. (Def.'s Ex. 85-3, Dye Dep. 184, 192-93, 200-201). At the end of the week, Dye was transferred to building sidewalls. (Def.'s Ex. 85-4, Dye Dep. 238; Sharp Aff. ¶ 15; Elson Aff. ¶ 13). Dye's pay was unaffected by the transfer. (Id.). As with setting cabinets, however, Dye was soon criticized for poor performance in building sidewalls as well. In particular, Dye was faulted for failing to make sure that the opening for the baggage door was "square." (Def. Ex. 85-4, Dye Dep. 241-43, 253; Sharp Aff. ¶ 21). As a result of the mistake, Forest River had to remove the aluminum exterior of several RV units and re-construct the baggage door openings. (Def.'s Ex. 85-4, Dye Dep. 241-42; Sharp Aff. ¶ 22).

On Oct. 18, 2005, Elson prepared a quality checklist, outlining quality concerns throughout the Salem Plant and addressing, in part, procedures for proper cabinet and wall installation. (Elson Aff. ¶ 20-21; Def.'s Ex.85-6 at 14, Elson Memo). Elson distributed the list to the Salem Plant's group leaders to discuss with their employees. (Def.'s Ex. 85-4, Dye Dep. 217-18, Elson Aff. ¶¶ 21-22). At first, Dye refused to initial the list, and he did so only after Elson had explained that the list was not intended as discipline but to communicate Forest River's expectations. (Def.'s Ex. 85-4, Dye Dep. 219-20; Elson Aff. ¶ 24; Def.'s Ex. 85-6 at 14, Elson Memo). Elson considered Dye's reaction indicative of Dye's defensive attitude and refusal to accept responsibility for his mistakes. (Elson Aff. ¶¶ 25-26). Sharp echoed Elson's concerns regarding Dye's defensive attitude in response to criticism. (Sharp Aff. ¶ 23).

On October 20, 2005, Sharp, Elson, and Garza met with Dye and issued him a written warning regarding his performance and attitude problems. (Sharp Aff. ¶ 24; Elson Aff. ¶ 28; Garza Aff. ¶ 6). At the meeting, Dye argued that he was not appropriately trained on the jig. (Def.'s Ex. 85-4, Dye Dep. 255-56). Additionally, Dye argued that he was left alone and was

4

unable to effectively set sidewalls by himself.[2] Sharp and Elson testify that it was not uncommon at the Salem Plant for one person to build sidewalls when another employee was absent and that one person should be able to handle the job when production levels were low. (Sharp Aff. ¶¶ 15, 19; Elson Aff. ¶¶ 15, 16). Under protest, Dye signed the disciplinary warning but qualified his signature at the bottom, adding "I disagree with what is written, I was forced to sign this paper and I have not been treated fairly from day one at this plant." (Def.'s Ex. 85-6 at 15, Personnel Action Notice; Garza Aff. ¶ 13). Dye did not mention that he felt discriminated against because of his race to any Forest River Human Resources Employees. (Def.'s Ex. 85-6, Dye Dep. 321). Dye claims that Sharp said he wanted Dye out of his plant. (Id. at 320). However, Forest River did not transfer Dye out of the Shelling Group or the Salem Plant, and Dye's duties and pay remained the same. (Sharp Aff. ¶ 33).

The next day, Friday, October 21, 2005, Dye told Elson that he was going to the Tsunami Plant to ask for his old job back. (Elson Aff. ¶ 35). On October 24, 2005, Dye resigned from the Salem Plant. (Def.'s Ex. 85-5, Dye Dep. 300; Sharp Aff. ¶ 36). That same day, Dye was hired by Heartland RV (Heartland) at the rate of $15 an hour. (Def.'s Ex. 85-5, Dye Dep. 304, 314). Soon thereafter, Heartland began paying Dye based on rate of production, increasing his pay to above $20.00 an hour. (Id. at 306; Pl.'s Response 2).

This Court must determine whether a genuine issue of material fact exists, sufficient to establish that Dye suffered race discrimination in violation of Title VII.[3]

---

[2] On October 19, 2006, Dye constructed side walls by himself due to the absence of another employee, Terry Galbreath. (Sharp Aff. ¶ 18, Rowe Aff. ¶ 17).

[3] In his original EEOC complaint, Dye additionally argued that he suffered discrimination based on his gender. (Def.'s Ex. 85-6 at 16, EEOC Complaint). Because Dye does not raise the issue of gender discrimination and presents no evidence in his response, this Court will not

5

B.    Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party as well to draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the non-moving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Ariz. v. Cities Servs. Co., 391 U.S. 253, 289 (1968)).

C.    Forest River's Motion for Summary Judgment

Dye's response to Forest River's motion for summary judgment consists of a three page written response that neither challenges Forest River's statement of facts nor directly contradicts Forest River's arguments. Rather, Dye blanketly asserts that "Eric Sharp, Bob (Elson), and

---

consider the issue.

James (Ball) treated me unfairly and singled me out as a black man." (Pl.'s Response 2). More specifically, Dye argues that he was transferred to building sidewalls, left to work alone, and singled out for disciplinary action because of his race. (Id.). Dye does not submit any affidavits, depositions, or other admissible evidence to support his allegations or to deny or contradict the evidence submitted by Forest River. Even though this Court liberally construes *pro se* proceedings, "a lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, . . . district courts are [not] obliged . . . to scour the record looking for factual disputes." Greer v. Bd. of Educ. of City of Chi., Ill., 267 F.3d 723, 727 (7th Cir. 2001). Despite Dye's insufficient response, this Court will consider all of Dye's allegations in deciding if there is a genuine issue as to any material fact.

To prove discrimination under Title VII, Dye may proceed either with direct evidence or under the burden shifting method of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Velez v. City of Chi., 442 F.3d 1043, 1049 (7th Cir. 2006). Having liberally considered the record in Dye's favor, this Court still finds that none of the evidence constitutes direct or circumstantial evidence of discrimination.

        1.        Direct Method

Direct evidence shows an employer's intent without relying on inference or presumption. Velez, 442 F.3d at 1049; Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997). Direct evidence is what the defendant said or did in the specific employment decision to terminate the employee. Plair, 105 F.3d at 347. Direct evidence can either be: (1) an admission by the decision maker that his actions were based on the prohibited discrimination or (2) a convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action. Davis v. Con-Way Transp. Cent. Express, Inc., 368 F.3d 776, 783 (7th

7

Cir. 2004); Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 396 (7th Cir. 1997); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000).

        a.        Dye fails to present direct evidence by a decision maker

Dye offers no evidence that constitutes an admission by a decision maker that he was transferred to building sidewalls, required to work alone, asked to sign the quality checklist, or issued a disciplinary warning because of his race.  First, assuming that group leader, Ball, was the decision maker responsible for transferring Dye to sidewalls, Dye offers no evidence beyond his own assumptions that the transfer was racially motivated.  (Def.'s Ex. 85-3, Dye Dep. 204).

Even assuming that Elson and Sharp were also decision makers responsible for distributing the quality checklist and for issuing Dye's disciplinary warning, Dye has failed to present any evidence amounting to an admission of discriminatory motivation. Although Dye argues that Sharp told him that he "wanted [Dye] out of his plant," this comment is not racially derogatory on its face and, standing alone, does not constitute direct evidence of discrimination. See Accurso v. United Airlines, 109 F.Supp.2d 953, 958-59 (N.D.Ill. 2000); Brown v. Commonwealth Edison Co., 1998 WL 142455, *18 (N.D.Ill. 1998).  Simply put, there is no admission of racial discrimination by a decision maker.

        b.        Dye fails to establish a mosaic that points to discrimination

Dye also offers no mosaic of evidence that points directly to race discrimination as the reason for Forest River's actions.  Dye loosely strings together a variety of circumstantial facts as direct evidence of discrimination.  For example, Dye alleges that as a result of challenging his group leader, Ball, regarding the pace of production, he was transferred to constructing side walls. (Def.'s Ex. 85-3, Dye Dep. 192-93, 198) ("[Ball] didn't like me as a Black man questioning him about his job and his authority on that.").  Further, Dye posits that he was

8

subsequently forced to work alone and inadequately informed of necessary engineering changes, in order to "make a distinction" of Dye and "set him up" for disciplinary action. (Pl.'s Response 2; Def.'s Exs. 85-3 & 85-4, Dye Dep 195, 211, 239-43, 255-56). Dye additionally argues that Elson and Sharp "systematically weeded [him] out" by making Dye sign a quality checklist and issuing him a fabricated disciplinary write up. (Pl.'s Response 2; Def.'s Exs. 85-3, 85-4 & 85-5, Dye Dep. 195, 205, 219-20, 263-67). However, these incidents do not establish the requisite direct evidence/mosaic that is necessary to establish a *prima facie* case of discrimination under Title VII.

Although Dye believes he suffered a series of negative employment actions at the hands of Forest River, those "bad" actions can not be automatically presumed to have been racially motivated. On their face, these actions do not appear racially motivated.  Further, Dye presents only his speculation to suggest that these actions were racially motivated.  Thus, because of the lack of evidence submitted to support Dye's theory, this Court can only speculate that these "bad events" occurred because of Dye's race. However, unsupported speculation is insufficient direct evidence to support a claim of discrimination. See Rosetto v. Office Max, 2007 WL 869213, *4 n.2 (N.D.Ind. 2007); Taylor v. J.C. Penney Co., Inc., 2007 WL 1341116, *6 (N.D.Ind. 2007); Uhl v. Zalk Josephs Fabricators, Inc.,121 F.3d 1133, 1137 (7th Cir.1997) ("Speculation does not meet a party's burden in defending a summary judgment motion.  Facts, not an employee's perceptions and feelings are required to support a discrimination claim."). Consequently, the alleged discriminatory actions do not constitute a mosaic of evidence that points to discrimination as the reason for Forest River's actions.

Because Dye does not offer direct evidence of discrimination, this Court must consider whether Dye has provided sufficient evidence under the burden shifting method of McDonnell

9

Douglas to survive summary judgment. See e.g. Blise v. Antaramian, 409 F.3d 861, 866 (7th Cir. 2005) (analyzing a plaintiff's claim under burden shifting method because plaintiff did not offer direct evidence or argue that it existed).

2. Burden Shifting Method

Under the burden shifting method, Dye must establish by a preponderance of the evidence that: (1) he was a member of a protected class, (2) similarly situated employees outside of the protected class were treated more favorably, (3) he suffered a materially adverse employment action, and (4) he performed her job satisfactorily. Velez v. City of Chi., 442 F.3d 1043, 1049-50 (7th Cir. 2006) (citing O'Neal v. City of Chi., 392 F.3d 909, 911 (7th Cir. 2004)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Williams v. Williams Elecs., Inc., 856 F.2d 920, 922-23 (7th Cir. 1988). If these elements are established, the burden shifts to Forest River to articulate a non-discriminatory justification for its action. Velez, 442 F.3d at 1050. If Forest River offers a non-discriminatory justification, Dye is still required to present sufficient evidence to create a triable issue whether Forest River's proffered reason is merely pretextual. O'Neal, 392 F.3d at 911 (7th Cir. 2004).

a. Dye fails to establish a prima facie case

The parties do not dispute that Dye is in a protected class because of his race. This Court will assume that Dye has established that he suffered a materially adverse employment action and was treated less favorably than similarly situated employees. But this Court finds that Dye still cannot establish a *prima facie* case of race discrimination because Dye cannot establish that he was performing his job satisfactorily.

One must perform his job to the employer's legitimate expectations at the time of the adverse employment action. Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004).

Forest River expected its employees to meet certain quality standards.  This is evidenced by Elson's quality checklist, which was circulated to all the departments of the Salem Plant for review. (Def.'s Ex. 85-4, Dye Dep. 217-18, Elson Aff. ¶¶ 21-22; Def.'s Ex. 85-6, Elson Memo at 14). This memo addressed specific areas for improvement, including requirements for cabinet installation and sidewall construction. (Id.). In addition, the memo required all employees to check their work for errors as a part of their individual work activities.  (Id.). The Salem Plant required each of the Shelling Department employees to initial the memo in order to acknowledge that they were aware of Forest River's expectations. (Elson Aff. ¶¶ 23-24).

     Dye's mistakes installing cabinets and constructing sidewalls, Elson's quality checklist, Dye's disciplinary writeup, and affirmations by several Forest River employees regarding Dye's defensive attitude establish that Dye was not meeting Forest River's legitimate job expectations. During his first week at the plant, both Sharp and Elson met with Dye regarding the quality of Dye's cabinet-setting work. (Def.'s Ex. 85-4, Dye Dep. 215, 225-26; Sharp Aff. ¶ 14; Elson Aff. ¶ 12).  Both men assert that Dye set cabinets crookedly and failed to properly install plywood panels. (Sharp Aff. ¶ 13; Elson Aff. ¶11).  Additionally, during his second week, Dye was faulted for improperly constructing sidewalls.  (Def. Ex. 85-4, Dye Dep. 241-43, 253; Sharp Aff. ¶ 21).  As a result of these mistakes, Forest River had to remove the aluminum exterior of several RV units and re-construct the baggage door openings. (Sharp Aff. ¶ 22).  Dye admits that he cut the sidewalls inaccurately and that several RV units had to be "reworked" as a result. (Def.'s Ex. 85-4, Dye Dep. 241-42).

    On October 20, 2005, Sharp, Elson, and Garza met with Dye to issue him a written disciplinary warning regarding his performance.  (Sharp Aff. ¶ 24; Elson Aff. ¶ 28; Garza Aff. ¶ 6). Under protest, Dye signed the disciplinary warning, arguing that the performance issues were

11

not his fault and claiming that he was a victim of unfair treatment. (Def.'s Ex. 85-6 at 15, Personnel Action Notice; Garza Aff. ¶ 13). However, Dye offers no evidence that he was performing his job duties satisfactorily. Dye offers no witness testimony, documents, or anything to suggest he had properly installed the cabinets or sidewalls. To the contrary, Dye admits that he made mistakes while constructing sidewalls, forcing his employer to "rework" several RVs. (Def.'s Ex.85-4, Dye Dep. 241-42).

In his defense, Dye indicates that he was experienced at both setting cabinets and building sidewalls. However, being experienced does not establish that he performed his job satisfactorily. See Cengr v. Fusibond Piping Systems, Inc., 135 F.3d 445, 452 (7th Cir. 1998) (despite evidence of job experience, the plaintiff failed to meet employers legitimate expectations due to poor performance). Additionally, Dye's argument that he had not received disciplinary writeups regarding performance prior to working at Forest River is similarly unhelpful. Even though Dye may have had success at his prior positions, it does not indicate that he was performing his present job satisfactorily, meeting his employers expectations at the time of the adverse employment action. See Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004); Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 545-46 (7th Cir. 2002).

Based on the evidence presented, Dye cannot establish that he performed his job satisfactorily to establish a *prima facie* case of race discrimination. Consequently, Dye cannot create a genuine factual issue as to whether he was legitimately meeting Forest River's performance expectations at the time of termination.

        b.      <u>Dye offers no evidence that Forest River's reasons are pretextual</u>

However, even if Dye could establish a prima facie case of race discrimination, and this Court believes he cannot, Dye must still posit evidence that suggests Forest River's proffered

reason is merely pretextual. Initially, the burden shifts to Forest River to articulate a non-discriminatory justification for its action. Velez v. City of Chi., 442 F.3d 1050 (7th Cir. 2006). If Forest River offers a non-discriminatory justification, Dye is still required to present sufficient evidence to create a triable issue concerning whether Forest River's proffered reason is merely pretextual. O'Neal v. City of Chi., 392 F.3d 909, 911 (7th Cir. 2004).

Forest River has provided a non-discriminatory reason for its actions. Forest River claims that it transferred Dye to sidewall construction, required Dye to initial the quality checklist, and issued Dye a disciplinary warning because of Dye's poor performance and defensive attitude. (Sharp Aff. ¶¶ 15, 24; Elson Aff. ¶ 13, 24, 28). Further, Forest River claims that Dye worked alone due a temporary employee absence.  (Sharp Aff. ¶ ; Rowe Aff.¶ 17).

Because Forest River has proffered legitimate nondiscriminatory reasons for its actions, Dye has the burden to present some evidence to create a genuine issue of whether Forest River's proffered reason is merely a pretext. O'Neal, 392 F.3d at 911.  Pretext means something worse than a business error, such as deceit to cover one's tracks. Davis v. Con-Way Transp. Central, Inc., 368 F.3d 776, 784 (7th Cir. 2004). "The focus of the pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well considered." Id.

The only evidence Dye offers to suggest that Forest River's proffered reasons are pretextual is his subjective belief that he was mistreated because of his race.  For instance, Dye asserts that he was set up for failure by his group leader, Ball, because Ball did not appreciate having his authority challenged by an African American. (Def.'s Ex. 85-3, Dye Dep. 198). Further, Dye asserts that, because Sharp "wanted [Dye] out of his plant," the leaders at the Salem Plant used the resulting mistakes as justification to "weed [him] out" with fabricated disciplinary write ups. (Pl.'s Response 2).  Despite his ardent assertions, however, Dye has failed to point to

13

any comments, letters, communications, actions by employees or supervisors, or anything to suggest Forest River treated him differently because of his race.[4]  Without more, Dye's subjective belief regarding the intentions and motivations of his superiors is nothing more than speculation.  "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." Hedberg v. Ind. Bell Tel. Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995).

Likewise, Dye's argument that he was the only African American employee in the Salem Plant is similarly unavailing. (Pl.'s Response 2).  Dye's only support for this is his own testimony, which is insufficient factual support for a summary judgment motion. See Fed. R. Civ. Pro. 56(e); Local Rule 56(e) ("the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). Further, even assuming Dye's statistic is accurate, it is insufficient, by itself, to create a factual issue of race discrimination. "[A]bsent a link between this alleged discrimination and the employment decisions . . . [the alleged discriminatory action] is at best anecdotal." Millbrook v. IBP, Inc., 280 F.3d 1169, 1177 (7th Cir. 2002).  Without more, Dye's anecdotal statistic is insufficient to create a reasonable inference that Forest River's actions were, in fact, racially discriminatory.  Thus, even if Dye could establish a *prima facie* case, and this Court finds he cannot, he cannot survive summary judgment because he offers no evidence to support his belief that Forest River's stated reasons are pretextual.

In summary, because Dye has failed to establish a *prima facie* case of race discrimination

---

[4] Dye claims that he has witnesses to present to this Court, but Dye offers no affidavits, deposition testimony, or even hearsay evidence regarding these witnesses. (Pl.'s Response 1, 3). The allegation that witnesses exist who will testify does not constitute evidence to create a genuine issue of fact to survive summary judgment.

and because Dye offers no evidence to create a triable issue as to whether Forest River's offered reasons are pretextual, Forest River's motion for summary judgment is **GRANTED**.

### III.    CONCLUSION

Forest River's motion to strike is **DENIED AS MOOT** [Doc No. 92]. With regards to Forest River's motion for summary judgment, Dye has not offered direct evidence of race discrimination, and Dye has failed to establish a prima facie case under the burden shifting method.  Consequently, Dye has not established that there is a genuine issue of fact as to whether Forest River discriminated based on Dye's race.  Forest River's motion for summary judgment is **GRANTED** [Doc. 84].  The clerk is **ORDERED** to enter judgment in favor of Forest River.

**SO ORDERED.**

Dated this 2nd Day of November, 2007.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge